780 F.2d 324
 54 USLW 2380, 5 Fed.R.Serv.3d 420,
Prod.Liab.Rep.(CCH)P 10,850
 Stella COWGILL, Executrix of the Estate of George Cowgill,
deceased and individually, Appellant,
v.
RAYMARK INDUSTRIES, INC., et al., H.K. Porter Company, Inc.,
Pacor, Inc., Eagle-Picher Industries, J.P. Stevens &
Company, Garlock, Inc., Precision Seal Division, Southern
Textile Company, Armstrong World Industries, Inc., Nicolet,
Inc., Keene Corporation, Owens-Illinois Glass Company,
Celotex Corporation, Gaf Corporation, Fibreboard
Corporation, Owens-Corning Fiberglas Corporation,
Forty-Eight Insulation, Inc., Pittsburgh Corning
Corporation, C.E. Refractories, Appellees,
v.
PORTER HAYDEN CO., LaFavorite Rubber Mfg. Co., Appellees.
 No. 85-1098.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 3, 1985.
Decided Dec. 30, 1985.
As Amended Jan. 8, 1986.
 
 Robert J. O'Shea, Jr. (argued), Shein, Paul, Reich & Meyers, P.C., Philadelphia, Pa., for appellant.
 James F. Hammill, Deborah H. Simon (argued), Nathan A. Schachtman, McCarter & English, Philadelphia, Pa., for Owens-Illinois Glass Co.
 Before ADAMS, Acting Chief Judge, and GIBBONS and STAPLETON, Circuit Judges.
 
 OPINION OF THE COURT
 
 1
 ADAMS, Acting Chief Judge.
 
 
 2
 This appeal in a diversity case presents the question whether appellant's claims under state survival and wrongful death acts were correctly dismissed on statute of limitations grounds.
 
 
 3
 Appellant's husband, a pipefitter who worked with asbestos-containing products for over thirty years, died shortly before she brought this lawsuit. The district court determined that, based on the undisputed facts in the record, the decedent should have known that he had an asbestos-related injury over two years before the filing of this suit. It therefore held that appellant's action was time barred, and granted summary judgment for the defendant asbestos companies. We conclude that, viewing the record in the light most favorable to appellant, as we must on a motion for summary judgment, it cannot be said as a matter of law that decedent should reasonably have known he had an asbestos-related injury more than two years before appellant filed her suit. Accordingly, we will vacate the grant of summary judgment and remand.
 
 I.
 
 4
 George Cowgill, the decedent of appellant Stella Cowgill, began working for Mobil Oil Company as a pipefitter at its refinery in Paulsboro, New Jersey in 1926. During his employment he handled asbestos-containing pipe covers made by several manufacturers. Mr. Cowgill left his job at Mobil in 1961.
 
 
 5
 Eighteen years later, in 1979, Mr. Cowgill received a letter and a telephone call from Mobil. The extent and nature of the information communicated to decedent in the letter and call are disputed, but it is agreed by all parties that Mr. Cowgill was invited to return to the Paulsboro refinery for a physical examination at Mobil's expense. Mr. Cowgill accepted this offer, and on November 16, 29 and 30, 1979, he was examined by a physician employed by Mobil, and a number of tests were performed on his blood and lung capacity. That the physician consulted with Mr. Cowgill after his examination and testing is not disputed, although the parties disagree as to what Mr. Cowgill was told by the physician.
 
 
 6
 Decedent returned to the Mobil plant in April 1980 for a second physical examination, and in November 1980 for a third examination. His medical records indicate that, on November 30, 1980, he participated in a group discussion arranged by Mobil. Defendants presented evidence that this discussion was one of a series of group presentations regarding asbestos-related diseases that Mobil had arranged for its retired and soon-to-retire employees. Mr. Cowgill, who was deposed in December of 1982 before his death in March 1983, had no clear recollection what was discussed at the group meeting he attended or exactly when it took place, although he admitted having been present at the meeting. In November 1981, Mr. Cowgill was formally diagnosed as having asbestosis. The diagnosis was communicated to him in a letter dated November 11, 1981, and appellant does not deny that, as of that date, decedent was aware of his asbestos-related injury.
 
 
 7
 Mr. Cowgill filed a personal injury suit in the Court of Common Pleas for Philadelphia County in August 1982.[1] In his complaint, he alleged that his asbestosis was caused by exposure to asbestos-containing materials while employed at the Mobil Oil refinery. Named as defendants were a number of asbestos manufacturers.
 
 
 8
 In September 1982, the month after he filed his state court action, Mr. Cowgill was diagnosed as having carcinoma of the lungs. He died of lung cancer on March 3, 1983. In response to preliminary objections filed by defendants, the state court dismissed his lawsuit on March 30, 1983 on grounds of forum non conveniens.[2]
 
 
 9
 Stella Cowgill, George's widow, filed this suit in the District Court for the Eastern District of Pennsylvania, under the New Jersey wrongful death and survival acts, N.J.Stat.Ann. Sec. 2A:15-3 (West Supp.1985) and Sec. 2A:31-1 (West 1952), on August 26, 1983. Jurisdiction was predicated on 28 U.S.C. Sec. 1332(a) (1982) by reason of the diversity of citizenship of the parties. Eighteen asbestos manufacturers were named as defendants, and two additional manufacturers were impleaded as third party defendants.
 
 
 10
 Armstrong World Industries, one of the defendants in this action, moved for summary judgment on behalf of all defendants on April 30, 1984. Armstrong's motion alleged that appellant's suit was governed by the Pennsylvania two-year statute of limitations applicable in personal injury actions, 42 Pa.Cons.Stat.Ann. Sec. 5524(2) (Purdon Supp.1985), and that the statute began to run on November 30, 1979, at the time of Mr. Cowgill's first physical examination by a Mobil doctor. Armstrong's motion thus requested that appellant's suit be dismissed as time barred. Appellant filed a response to Armstrong's motion on May 14, 1984, and Armstrong, on behalf of all defendants, responded to her answer on May 25, 1984.
 
 
 11
 On November 16, 1984, after the discovery deadline had passed and a joint pretrial memorandum had been filed, defendant Owens-Corning Fiberglas Corporation moved for permission to reopen discovery to take the deposition of George Cowgill's personal physician, Dr. Brennan. The motion was granted and Dr. Brennan was deposed on January 4, 1985. All parties received copies of the transcript shortly after the deposition was taken. However, although defendants' motion for summary judgment was still pending, Dr. Brennan's deposition was never filed with the district court.
 
 
 12
 On January 24, 1985, the district judge granted summary judgment for defendants. He held that, based on the undisputed facts in the record, and drawing all inferences favorable to appellant, the decedent should reasonably have known as of November 1979 that he had an asbestos-related injury caused by his exposure to asbestos at the Mobil Oil refinery. The court thus concluded that the two-year Pennsylvania statute of limitations had run in November 1981, nearly two years before appellant filed her lawsuit.
 
 
 13
 Mrs. Cowgill raises a series of issues in this appeal. First, she contends that her suit is governed by the New Jersey statute of limitations in personal injury suits and New Jersey law defining causes of action for statute of limitations purposes, rather than by the Pennsylvania limitations statute and law.[3] Next, Mrs. Cowgill argues that summary judgment was improperly granted for defendants because material issues of fact remain in dispute as to whether her husband reasonably should have known of his asbestos-related injury more than two years before this suit was filed. The grant of summary judgment is further challenged on the ground that it was entered without adequate notice. Finally, appellant asserts that, even if her survival action is time barred under the Pennsylvania statute of limitations, her wrongful death claim was timely brought within two years of her husband's death.
 
 
 14
 Defendants present an additional question. They contend that the Pennsylvania Wrongful Death Act, 42 Pa.Cons.Stat.Ann. Sec. 8301(a) (Purdon Supp.1985), precludes appellant's wrongful death claim because her husband filed a personal injury action during his lifetime.
 
 
 15
 We will address each issue in turn.
 
 II.
 A.
 
 16
 Appellant's first argument concerns the choice-of-laws issue whether the Pennsylvania or New Jersey statute of limitations should govern her case. She insists that New Jersey's two-year statute of limitations in wrongful death and survival suits, N.J.Stat.Ann. Sec. 2A:14-2 (West 1952), rather than Pennsylvania's two-year statute in such actions, 42 Pa.Cons.Stat.Ann. Sec. 5524(2), is controlling in this action because it was brought under the substantive law of New Jersey. She further argues that New Jersey law, and not Pennsylvania law, should govern the "definition" of her causes of action, that is, when the statute of limitations began to run as to each of her claims for recovery.
 
 
 17
 It is understandable that Mrs. Cowgill wishes to have New Jersey law regarding the definition of causes of action for statute of limitations purposes applied in her case. Under the New Jersey rule, a cause of action for cancer is separate from a claim for asbestosis, and the statute of limitations may begin to run as to the two claims at different times, even when both injuries resulted from the same course of exposure to asbestos-containing products. See, e.g., Devlin v. Johns-Manville Corp., 202 N.J.Super. 556, 495 A.2d 495, 502 (Law Div.1985); Goodman v. Mead Johnson & Co., 534 F.2d 566, 574 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Thus, under the New Jersey rule, the two-year statute began to run on appellant's claim based on her husband's lung cancer when his cancer was diagnosed in September 1982, and her suit is timely filed as to the cancer claim. Pennsylvania courts, however, have held that all asbestos-related injuries constitute a single cause of action, and that the limitations period is triggered as to that action when the first of the injuries is or reasonably should have been discovered. See Cathcart v. Keene Industrial Insulation, 324 Pa.Super. 123, 136-37 & 149, 471 A.2d 493, 500 & 507 (1984) (en banc); see also Pocono International Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). Under the Pennsylvania rule, therefore, Mrs. Cowgill's claims for recovery based upon both her husband's asbestosis and his cancer are time barred if he reasonably should have known that he had asbestosis more than two years before appellant filed suit.
 
 
 18
 Both of the arguments advanced by Mrs. Cowgill--that New Jersey's limitations statute is applicable and that New Jersey law should be applied to determine when the statute began to run--were recently rejected by this Court in Ross v. Johns-Manville Corp., 766 F.2d 823 (3d Cir.1985). Ross is on all fours with this appeal for purposes of resolving the choice-of-laws issues raised here. In Ross, as here, the district court was sitting as a diversity court in Pennsylvania and the plaintiff's asbestosis and cancer claims were brought under the substantive law of New Jersey. The plaintiff in Ross contended, as does Mrs. Cowgill, that New Jersey's statute of limitations should govern her case. Id. at 825-26. She also argued that the New Jersey rule that a cause of action for cancer is separate from a claim for asbestosis, and is governed by different limitations considerations, should be applied to her action. Id. at 826.
 
 
 19
 However, in Ross we noted that, as a federal court sitting in diversity, we are bound to follow the forum's choice-of-laws rules to determine the applicable statute of limitations and related law. Id. at 826; see Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); McGowan v. University of Scranton, 759 F.2d 287, 290 (3d Cir.1985). After considering the relevant case law and statutes, we concluded that the state courts would apply Pennsylvania's limitations period and law. Id. at 826, 828. It follows that the Pennsylvania two-year statute of limitations applies in this case, and that it began to run as to all of appellant's claims when the decedent knew or reasonably should have known of his first asbestos-related injury and its cause.
 
 B.
 
 20
 Mrs. Cowgill's next contention is that summary judgment was improperly granted, both procedurally and because material issues of genuine fact remain in dispute regarding when Mr. Cowgill knew, or in the exercise of reasonable diligence should have known, that he was suffering from an asbestos-related disease. We will first address her challenge to the procedural adequacy of the grant of summary judgment.
 
 
 21
 Federal Rule of Civil Procedure 56(c) states that:
 
 
 22
 [A] motion [for summary judgment] shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of the hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 
 
 23
 Appellant here maintains that Rule 56(c) requires that the parties to an action receive notice that a pending motion for summary judgment will be taken under advisement on a particular day. She asserts that, in this case, the district judge's decision to grant summary judgment "on the eve of trial" deprived her of the opportunity to file opposing affidavits and evidence "up until the day of the hearing." Had she known that she was facing disposition on the merits, she continues, she would have filed with the court a copy of the deposition transcript of Dr. Brennan, decedent's personal physician. She urges that the deposition of Dr. Brennan would have provided additional support for her claim that her husband did not learn of his asbestosis before November 1981.
 
 
 24
 It is conceded by appellant that the hearing referred to in Rule 56 need not be an oral hearing. See Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 863 (5th Cir.1970). Indeed, Fed.R.Civ.P. 78 states that "[t]o expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing...." The district court for the Eastern District of Pennsylvania has done so. See Local Rules, U.S.D.Ct. for E.D.Pa., Rule 20(f) ("The court may dispose of a motion without oral argument."). Thus Mrs. Cowgill may complain only if she was entitled to notice that the motion for summary judgment would be resolved on a particular day.
 
 
 25
 We conclude that she was not. Where a party has filed a motion for summary judgment, the opposing party is under an obligation to respond to that motion in a timely fashion and to place before the court all materials it wishes to have considered when the court rules on the motion. When a reply has been made, the motion is ripe for resolution and the court may decide it when it is prepared to do so. If Mrs. Cowgill believed that the deposition of Dr. Brennan was relevant to the determination when decedent knew or reasonably should have known of his injury and its cause, it was incumbent upon her to file it with the court.
 
 
 26
 Mrs. Cowgill relies upon this Court's decisions in Crown Central Petroleum Corp. v. Waldman, 634 F.2d 127 (3d Cir.1980), and Bryson v. Brand, 621 F.2d 556 (3d Cir.1980), as support for the proposition that she was deprived of notice and an opportunity to oppose the motion. However, those cases dealt with situations in which the district court converted a motion to dismiss on the pleadings into a motion for summary judgment without giving notice that it was doing so. In such a situation, the nonmoving party may be unaware that it is facing disposition of its case on the merits and may be deprived of an opportunity effectively to oppose such disposition. By contrast, any claim by appellant in this case that she did not receive notice that she was facing disposition by summary judgment is disingenuous. Defendant Armstrong's motion, as well as those of several other defendants, was pending and counsel for Mrs. Cowgill was fully cognizant of that fact. That discovery had been reopened and new evidence obtained did not alter the situation. We decline to impose upon the district court a duty to remind litigants of unresolved motions pending in their cases before it may decide them.
 
 
 27
 Inasmuch as there were no procedural defects in the grant of Armstrong's motion, it must be determined whether summary judgment was improperly granted on the ground that "it is factually indisputable that a reasonably diligent person would have attained the knowledge of his injury and the cause thereof by November 30, 1979," District Court Opinion at 5 (Feb. 1, 1985), app. at 193. The relevant facts have been set out above and will not be repeated here.
 
 
 28
 Our standard of review on appeal from an order granting summary judgment is identical to the test that a district court must apply when ruling on a motion for summary judgment. Goodman, 534 F.2d at 573. That standard requires that
 
 
 29
 [i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true, and when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.
 
 
 30
 Id. See also Gans v. Mundy, 762 F.2d 338, 340 (3d Cir.1985); Koshatka v. Philadelphia Newspapers, Inc., 762 F.2d 329, 333 (3d Cir.1985).
 
 
 31
 Under this test, we must accept as true Mr. Cowgill's assertions in his December 1982 deposition that Dr. Barnshaw, the Mobil physician, did not tell him at his examinations that he had pleural thickening indicative of asbestos exposure, and that no one informed him of his asbestosis until November 1981. Indeed, defendants "agree that based upon the evidence, there is a genuine issue of fact concerning whether George Cowgill received on November 20, 1979 actual knowledge of his asbestos related injury and its causative relationship to his previous exposure." Defendants' Motion for Summary Judgment, app. at 30. Thus, they do not contend that the record establishes beyond dispute that decedent knew of his injury and its cause in November 1979. Rather, they assert that the issue is whether decedent, as a reasonably diligent individual, should have learned of his asbestos-related injury and its cause by November 1979.
 
 
 32
 Defendants have correctly stated the discovery rule applied by Pennsylvania courts to determine when the statute of limitations in a "creeping disease" case began to run. See Cathcart, 324 Pa.Super. at 135, 471 A.2d at 500; Symbula v. Johns-Manville Corp., 343 Pa.Super. 541, 495 A.2d 598, 599 (1985); Pastierik v. Duquesne Light Co., 341 Pa.Super. 329, 491 A.2d 841, 842 (1985). That rule provides that, in cases "involving diseases contracted from exposure to hazardous substances, the statute of limitations begins to run when the plaintiff knows or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." Pastierik, 341 Pa.Super. at 330, 491 A.2d at 842. The Pennsylvania Supreme Court has explained that a plaintiff could not reasonably have known of his injury and its cause if, "despite the exercise of due diligence," he was unable to "ascertain the fact of a cause of action." Pocono International Raceway, 503 Pa. at 85, 495 A.2d at 471.
 
 
 33
 Our inquiry consequently must be whether Mr. Cowgill, in the exercise of reasonable diligence, should have known by August 1981, two years before this suit was filed, that he had been injured because of his exposure to asbestos at the Mobil Oil Refinery. Viewing the record most favorably to appellant, it appears that in the fall of 1979, Mr. Cowgill received a letter and telephone call inviting him to return to Mobil for a physical examination at Mobil's expense. Decedent testified that neither the letter nor the caller made any mention of asbestos exposure or related health hazards. He further stated that Dr. Barnshaw at no time informed him that he had pleural thickening or any signs of disease related to asbestos exposure until he received a letter in November 1981 that notified him of his diagnosis of asbestosis. Indeed, Dr. Barnshaw himself admitted that he did not recall George Cowgill nor could he testify from memory to having told Mr. Cowgill that he showed signs of pleural thickening or asbestosis. The physician further testified that when "dealing with possibly very early asbestos-related disease ... one cannot be exact, one has to hedge." App. at 127. These facts are insufficient to establish as a matter of law that the decedent reasonably should have known by August 1981 that he had asbestosis.
 
 
 34
 Defendants, however, point to Mr. Cowgill's admission that he attended a number of group discussions about asbestos-related diseases at the Mobil refinery. They argue that his attendance at these meetings establishes that he reasonably should have known of his asbestos-related injury over two years before this action was brought. We cannot agree. To accept defendant's contention would be to rule as a matter of law that any individual who has been exposed to asbestos in the workplace should know that he has an asbestos-related disease as of the date he learns of the health hazards posed by asbestos exposure. While the meetings attended by George Cowgill certainly should have notified him that exposure to asbestos-containing products may cause lung disease, they cannot be said to have indicated that he himself had contracted such a disease.[4]
 
 
 35
 We conclude that issues of material fact remain in dispute and that, on this record, viewed in the light most favorable to appellant, it cannot be said as a matter of law that decedent should have known of his asbestos-related injury more than two years prior to the filing of appellant's suit. The grant of summary judgment for defendants must therefore be vacated and the matter remanded in order that a jury may determine when Mr. Cowgill knew or reasonably should have known of his injury and its cause.
 
 C.
 
 36
 It remains to address Mrs. Cowgill's contention that, even if it is found that the Pennsylvania statute of limitations began to run as to her survival claim more than two years before she commenced this action, her wrongful death claim was timely brought. She asserts that the statute began to run as to that claim, not when her husband knew or should have known of his injury and its cause, but when he died. She cites an opinion from the Philadelphia County Court of Common Pleas in support of her position. See Sim v. Johns-Manville Corp., No. 1525 (180) (asbestos case), June Term, 1979 (Phila.Cty.Ct. of Common Pleas filed Jan. 25, 1984).
 
 
 37
 Appellant's argument is that the statute of limitations governing a wrongful death action begins to run at the decedent's death, regardless of whether and when the statute of limitations began to run as to the decedent's personal cause of action based upon his injury. This view, however, was rejected by the Pennsylvania Supreme Court in Howard v. Bell Telephone Co., 306 Pa. 518, 160 A. 613 (1932). In that case, the court held that a widow's wrongful death action was barred by the statute of limitations because the statute had run as to a cause of action by her husband before his death. It reasoned that, "[s]ince the widow's right of action is derivative and in succession or substitution for [decedent's], its very existence depends upon a right of action in the husband at the time of his death." 306 Pa. at 522, 160 A. at 614. While the cause of action described by the court sounds more like a survival action than a suit for wrongful death, see Harvey v. Hassinger, 315 Pa.Super. 97, 102, 461 A.2d 814, 816 (1983) (a survival action, unlike a wrongful death action, is not a new cause of action but merely continues in the decedent's personal representative the right of action that accrued to the decreased at common law), its holding was nonetheless clear: "[W]here a man has been injured through alleged negligence, and at the time of his death his right of action has been extinguished by the statutory limitation, his widow cannot maintain a suit against the alleged wrongdoer based on the same act of negligence." 306 Pa. at 524, 160 A. at 615. See also Grbac v. Reading Fair Co., 688 F.2d 215, 217 (3d Cir.1982) ("[I]f the statute of limitations in the personal injury action had run before the decedent's death, there could be no recovery under the Wrongful Death Act.") (dictum); Redeker v. Johns-Manville Products Corp., 571 F.Supp. 1160, 1168 (W.D.Pa.1983) (statute begins to run in wrongful death action when victim had, or reasonably should have had, knowledge of the injury and its cause).
 
 
 38
 In a diversity case when the highest court of the state has not yet addressed the question under consideration, a federal court has the obligation to forecast state law. McGowan, 759 F.2d at 291; McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 661-62 (3d Cir.), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). In this matter, although the Pennsylvania Supreme Court has spoken in Howard, we are wary of considering that decision conclusive precedent because of its age and the subsequent changes that have occurred in the statutes and case law governing limitations periods in wrongful death and survival cases. We nonetheless believe that Howard must be accorded considerable weight, absent any indication from the Pennsylvania Supreme Court that it has been abandoned. However, we believe it is prudent also to consult more recent "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." McGowan, 759 F.2d at 291 (quoting McKenna, 622 F.2d at 663).
 
 
 39
 The Pennsylvania Superior Court recently held that the discovery rule does apply to toll the running of the current statute of limitations in wrongful death and survival actions. Powell v. Johns-Manville Corp., 342 Pa.Super. 544, 493 A.2d 724, 726-27 (1985). This Court had forecasted the holding in Powell before it was decided. See McGowan, 759 F.2d at 303 (predicting that the Pennsylvania Supreme Court will apply the discovery rule to toll the running of the statute of limitations in wrongful death and survival actions). Powell and McGowan lend support to the view that the Pennsylvania courts will adhere to the rule in Howard. We thus conclude that, just as the discovery rule may be applied to toll the statute of limitations until after a decedent's death, it may be applied to set the statute running before the decedent's death where the decedent knew or should have known of his injury and its cause before he died. Accordingly, if it is determined at trial that Mr. Cowgill should have learned of his asbestosis more than two years before this suit was filed, both appellant's survival and her wrongful death claims are barred.
 
 D.
 
 40
 In this appeal, defendants advance the proposition that, regardless when the statute of limitations is found to have begun to run as to appellant's survival claim, her wrongful death claim is barred by the plain language of the Pennsylvania Wrongful Death Act. That statute provides in part:
 
 
 41
 (a) General rule.--An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no action for damages was brought by the injured individual during his lifetime.
 
 
 42
 42 Pa.Cons.Stat.Ann. Sec. 8301(a) (Purdon Supp.1985). They maintain that, because Mr. Cowgill filed a personal injury action in the Philadelphia County Court of Common Pleas before his death, his widow is now foreclosed from asserting a wrongful death action based on the same injuries.
 
 
 43
 This argument was not made in defendant Armstrong's motion for summary judgment, and it was not addressed by the district court in its opinion explaining the order granting Armstrong's motion. Appellant thus has not had an opportunity fully to contest the applicability of Sec. 8301(a) to her case, nor has the district court considered the question. Further, we note that Mrs. Cowgill has argued that her suit was brought under the New Jersey Wrongful Death Act and not the Pennsylvania act, and that the substantive law of New Jersey governs her case.[5] The district court never resolved the question which state's law would govern the substantive issues in this case because of its disposal of the action on statute of limitations grounds. Under these circumstances, we are reluctant to resolve the issue whether Sec. 8301(a), if it is applicable to appellant's suit, bars her wrongful death claim. The district court should consider the effect of Sec. 8301(a) upon remand, if it determines that the substantive law of Pennsylvania is to be applied in this case.
 
 III.
 
 44
 The district court correctly determined that the Pennsylvania statute of limitations and concomitant law governs appellant's case. However, we conclude that summary judgment was granted improperly because material issues of fact remain in dispute concerning when the decedent should reasonably have known of his injury and its cause. We further hold that the statute began to run as to both appellant's survival and her wrongful death claims when her decedent knew or reasonably should have known of his asbestos-related disease. Finally, upon remand, the district court should consider whether 42 Pa.Cons.Stat.Ann. Sec. 8301(a) is applicable to appellant's wrongful death claim and, if so, whether her claim is barred by that statute because her husband instituted a suit for personal injuries during his lifetime. The order of the district court granting summary judgment for defendants will be vacated and the matter remanded for further proceedings consistent with this opinion. Costs taxed against the appellees.
 
 
 
 [1]
 Cowgill v. Johns-Manville Corp, No. 5823 (1671) (Asbestos Case), August Term, 1982 (Phila. Cty. Ct. of Common Pleas filed Aug. 23, 1982)
 
 
 [2]
 Defendants contend that Mr. Cowgill's state court suit was also dismissed because the statute of limitations had run. However, they did not contend below, nor do they argue here, that the state court's dismissal of the action should be given res judicata effect by this Court. Indeed, they never produced the state court order dismissing the action or in any way substantiated their claim that the state judge issued a ruling on the applicability of the statute of limitations. Under these circumstances, a grant of summary judgment by the district court on res judicata grounds might well have been erroneous. See Peterson v. United States, 694 F.2d 943, 945 (3d Cir.1982) (reversing grant of summary judgment where based on unsubstantiated claim; Fed.R.Civ.P. 56(e) requires that where a contention is based on a document, the document must be attached to the affidavit making the assertion)
 
 
 [3]
 The applicable Pennsylvania statute of limitations for survival and wrongful death action states that the "following actions and proceedings must be commenced within two years: ... (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another." 42 Pa.Cons.Stat.Ann. Sec. 5524(2) (Purdon Supp.1985)
 
 
 [4]
 Defendants argue that Mr. Cowgill should have suspected he had asbestosis because he had shortness of breath. However, they produced no evidence showing when decedent's breathing problems began, and he himself could not recall. App. at 57. Furthermore, Mr. Cowgill was a heavy smoker, app. at 56-57, and might well have attributed his ailment to his use of cigarettes
 
 
 [5]
 The Cowgills resided in New Jersey, Mr. Cowgill allegedly was exposed to asbestos at the Mobil Oil Refinery in Paulsboro, New Jersey, and he learned that he had asbestosis some time between November 1979 and November 1981 in that state