**Sharon J. REESER**

v.

**CABOT CORPORATION, et al.**

No.Civ. A. 01–2776.

United States District Court, E.D. Pennsylvania.

April 22, 2002.

Ruben Honik, Golomb & Honik, Philadelphia, PA, for Sharon J. Reeser.

Neil S. Witkes, Manko, Gold & Katcher, Bala Cynwyd, PA, John C. Traficonte, Boston, MA, Karen M. Connores, Boston, MA, for Cabot Corp.

Thomas C. DeLorenzo, Marshall, Dennehy, Warner, Coleman & Goggin, Philadelphia, PA, for NGK Metals Corp.

*MEMORANDUM*

BARTLE, District Judge.

Plaintiff Sharon J. Reeser has brought this action as Administratrix of the Estate

of her mother Geneva C. Bare for personal injury and wrongful death allegedly suffered from exposure to decades of emissions from the operation of a beryllium plant near Reading, Pennsylvania ("Reading plant" or "plant"). The defendants are Cabot Corporation ("Cabot") and NGK Metals Corporation ("NGK Metals"), the former plant owners. Plaintiff has asserted claims of strict liability for abnormally dangerous activity, strict liability for ultrahazardous activity, negligence and strict liability exemplary damages, fraudulent concealment or nondisclosure, civil conspiracy and wrongful death and survival actions. Before the court are the motions of defendants Cabot and NGK Metals for summary judgment. Defendants maintain that all of plaintiff's claims are barred by the relevant statutes of limitations. Plaintiff invokes the discovery rule to toll the statutes.

We may grant summary judgment only if there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant must come forward with admissible evidence containing "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *see Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n. 13 (3d Cir.1999); *Wetzel v. Tucker*, 139 F.3d 380, 383 n. 2 (3d Cir.1998). We review all evidence and make all reasonable inferences from the evidence in the light most favorable to the non-movant. *See Wicker v. Consol. Rail Corp.*, 142 F.3d 690, 696 (3d Cir.1998).

### I.

Plaintiff Sharon Reeser filed this action on June 6, 2001. According to the Complaint, Geneva Bare died on November 2, 2000, from chronic beryllium disease (also known as berylliosis) as a result of exposure to "respirable beryllium dust, fumes and particulate matter" emanating from the Reading plant over a period of more than fifty years.

The following facts for present purposes are undisputed. Mrs. Bare resided within two blocks of the Reading plant during substantially all of her life. In February, 1996 she complained of shortness of breath to her physician, Dr. William Santoro, who referred her to Dr. Ronald Krol, a respiratory specialist. In his February 12, 1996 letter to Dr. Santoro, Dr. Krol stated that Mrs. Bare "certainly has progressive interstitial lung disease and had significant interstitial lung disease as far back as 1977." Dr. Krol informed Dr. Santoro that he did not know the cause of her lung disease, but that it "could be a form of idiopathic pulmonary fibrosis, *berylliosis*, sarcoidosis, even bronchiectasis" (emphasis added). On March 12, 1996, Dr. Krol prescribed steroids and oxygen therapy to treat her lung condition. In July, 1997, Dr. Krol diagnosed her with "[l]ong standing stable but progressively worse (over 20 years) Interstitial Lung Disease, possible berylliosis." He continued to treat her with oxygen.

During her deposition, Mrs. Bare's daughter, Judith Forry testified that during a doctor visit in the mid–1990's her mother asked whether her lung disease could be due to beryllium exposure. According to Ms. Forry, her mother was prompted to ask that question due to an article that she had seen in the Reading Eagle/Reading Times. Ms. Forry stated that the doctor "really kind of put it off. He really didn't think it was important to her case. He said that the test wasn't really accurate."

### II.

In this diversity action, we are obligated to apply the relevant Pennsylvania statutes

of limitations. *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109–11, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Pennsylvania law provides a two-year limitations period for "[a]n action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or ... negligence of another." 42 Pa. Cons. Stat. Ann. § 5524(2). The same two-year bar applies to "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud." 42 Pa. Cons.Stat. Ann. § 5524(7). Likewise, a civil conspiracy claim must be brought within two years. *Winward Agency, Inc. v. Cologne Life Reinsurance Co.*, No. CIV. A. 95–CV–7830, 1996 WL 392539, at *2 (E.D.Pa. July 11, 1996); *In re Asbestos Sch. Litig.*, 768 F.Supp. 146, 150 (E.D.Pa.1991) (citation omitted).

■ Pennsylvania law provides that "[a]ll causes of action or proceedings, real or personal, shall survive the death of the plaintiff." 42 Pa. Cons.Stat. Ann. § 8302. However, "the survival statutes do not create a new cause of action; they simply permit a personal representative to enforce a cause of action which had already accrued to the deceased before his [or her] death." *Anthony v. Koppers Co.*, 496 Pa. 119, 436 A.2d 181, 185 (1981) (citation and footnote omitted). Therefore, the statute of limitations on a survival action begins to run "prior to death with respect to injuries that the afflicted individual should reasonably have 'discovered' while alive." *Pastierik v. Duquesne Light Co.*, 514 Pa. 517, 526 A.2d 323, 326 (1987) (citation omitted).

■ Pennsylvania also allows actions to be brought "to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another." 42 Pa. Cons.Stat. Ann. § 8301(a). A wrongful death suit is derivative of the decedent's injury and "dependent upon [his or] her own cause of action being viable at the time of [his or] her death." *Moyer v. Rubright*, 438 Pa.Super. 154, 651 A.2d 1139, 1143 (1994); *see Cowgill v. Raymark Indus., Inc.*, 780 F.2d 324, 331–32 (3d Cir. 1985); *Howard v. Bell Tel. Co. of Pa.*, 306 Pa. 518, 160 A. 613 (1932). Similar to survival actions, "[a]s a general rule, no action for wrongful death can be maintained where the decedent, had he [or she] lived, could not himself [or herself] have recovered for the injuries sustained." *Ingenito v. AC & S, Inc.*, 430 Pa.Super. 129, 633 A.2d 1172, 1176 (1993) (citations omitted). The Superior Court of Pennsylvania has further explained that "if at the time of death a negligence action, based on the injuries that led to the death, would have been time barred, the wrongful death action is also time barred." *Sunderland v. R.A. Barlow Homebuilders*, 2002 PA Super 16, 791 A.2d 384, 390 (2002) (citations omitted).

For present purposes, plaintiff does not dispute that Mrs. Bare was exposed to and injured by the beryllium emissions from defendants' plant more than two years before the filing of this lawsuit on June 6, 2001. However, as noted above, plaintiff maintains that this court should toll the statutes of limitations in accordance with the discovery rule.

■ Under Pennsylvania law, "[a]s a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983) (citations omitted). The Supreme Court of Pennsylvania has described the discovery

rule as "a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he [or she] has been injured and that his [or her] injury has been caused by another party's conduct." *Crouse v. Cyclops Indus.*, 560 Pa. 394, 745 A.2d 606, 611 (2000) (citations omitted).

 The discovery rule is an "exception" to the strict application of the statute of limitations and "arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its cause." *Pocono,* 468 A.2d at 471. This due diligence requirement "has some teeth." *Cochran v. GAF Corp.,* 542 Pa. 210, 666 A.2d 245, 250 (1995). Once a party raises the applicability of the discovery rule, a court must, "before applying the exception of the [discovery] rule, address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action." *Pocono,* 468 A.2d at 471. Plaintiff has the burden of establishing Mrs. Bare's "inability to know of the injury despite the exercise of reasonable diligence." *Dalrymple v. Brown,* 549 Pa. 217, 701 A.2d 164, 167 (1997) (citation omitted); *Cochran,* 666 A.2d at 250 (citations omitted); *see Floyd v. Brown & Williamson Tobacco Corp.,* 159 F.Supp.2d 823, 829 (E.D.Pa.2001). Furthermore, "Pennsylvania courts have consistently applied the discovery rule in only the most limited of circumstances." *Dalrymple,* 701 A.2d at 171. Pennsylvania courts have also been "unwilling to allow the incapacity of a plaintiff to toll the statute of limitations." *Baily v. Lewis,* 763 F.Supp. 802, 808 (E.D.Pa.1991); *see Dalrymple,* 701 A.2d at 168–69.

 We recognize that "[w]here the issue [of reasonable diligence] involves a factual determination regarding what constitutes a reasonable time for the plaintiff to discover his [or her] injury and its cause, the issue is usually for the jury." *Cochran,* 666 A.2d at 248 (citations omitted); *see Pickett v. Am. Ordnance Pres. Ass'n,* 60 F.Supp.2d 450, 454 (E.D.Pa. 1999). However, the Supreme Court of Pennsylvania has declared "the well established principle that where the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law." *Cochran,* 666 A.2d at 248 (citation omitted).

 Reasonable or due diligence is "a reasonable effort to discover the cause of an injury under the facts and circumstance present in the case." *Id.* at 249 (citation omitted). The Supreme Court of Pennsylvania has cautioned that "[t]here are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence." *Id.* (citations omitted). Reasonable or due diligence is an objective rather than a subjective standard. *Id.* We must evaluate Mrs. Bare's actions to determine whether she exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Burnside v. Abbott Labs.,* 351 Pa.Super. 264, 505 A.2d 973, 988 (1985) (citation omitted). Further, "[i]t is well settled that the statute of limitations is not tolled by mistake or misunderstanding." *Cochran,* 666 A.2d at 249 (citations omitted). Additionally, "a diligent investigation may require one to seek further medical examination as well as competent legal representation." *Id.* (citations omitted).

### III.

 The plaintiff, we emphasize, has the burden to prove that this lawsuit is not too late. *Dalrymple,* 701 A.2d at 167 (citation omitted); *Cochran,* 666 A.2d at 250 (citations omitted). Using an objective

standard, plaintiff must establish that even through the exercise of reasonable diligence, Mrs. Bare could not have known about defendants' wrongdoing more than two years before plaintiff brought suit on June 6, 2001. Plaintiff maintains that there are genuine issues of material fact precluding the entry of summary judgment and that it is for a jury to determine whether her claims are time-barred. Defendants, on the other hand, contend that under the undisputed facts before us, plaintiff cannot establish that this action is timely.

As the undisputed facts related above make clear, Mrs. Bare had symptoms as early as the mid–1990's. Her physician prescribed her several medications to treat her condition, including oxygen and steroids. According to Ms. Forry, Mrs. Bare's daughter, during a visit to her doctor in the mid–1990's, Mrs. Bare, after reading an article in the local newspaper, asked if her condition could have been caused by her exposure to beryllium from the Reading plant. Obviously, she was concerned that her exposure to beryllium had caused her illness as a result of living only two blocks from the plant for many years. Mrs. Bare certainly was further alerted in 1996 and 1997 when she was diagnosed with lung disease. At that point she, of course, knew about beryllium emissions from the Reading plant. Yet she took no further action. Clearly, Mrs. Bare failed to exhibit "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Burnside*, 505 A.2d at 988 (citation omitted).

Mrs. Bare's circumstances are similar to those of the plaintiff in *Cochran* where the Supreme Court of Pennsylvania affirmed the grant of defendants' motion for summary judgment on statute of limitation grounds. In that case, the plaintiff, who had been occupationally exposed to asbestos for many years, was diagnosed with lung cancer in 1981, although the diagnosis did not tie the cancer to asbestos exposure. The plaintiff "did not seek additional legal or medical help to ascertain the precise cause of his cancer until" 1985, four years after his initial diagnosis. *Cochran*, 666 A.2d at 249. The court found that plaintiff's failure to seek further medical or legal assistance "to ascertain the cause of his injury was the result of 'somnolence,' rather than 'blameless ignorance.'" *Id.* at 250 (citations omitted).

While we sympathize with plaintiff and regret the tragic death of her mother Geneva Bare, we must be mindful of the Commonwealth's strong public policy of preventing the litigation of stale claims. *Dalrymple*, 701 A.2d at 170. Consistent with this strong public policy, the Pennsylvania Supreme Court has emphasized the narrowness of the discovery rule exception. It has cautioned that any expansion would "open the flood gates to allow anyone with a good faith lack of diligence to claim benefit of the rule" and "would severely erode the finality of our statute of limitations." *Cochran*, 666 A.2d at 250. It has further explained that "[t]here are few facts which diligence cannot discover," and that mistake or misunderstanding on the part of a plaintiff is not enough to stop the clock. *Id.* at 249–50 (citations omitted). Giving plaintiff the benefit of all doubt, the time for commencing this action began to run at the latest in 1997. By this time, Mrs. Bare certainly knew enough "to awaken inquiry and direct diligence." *Id.* at 249. Unfortunately, suit was not instituted until June 6, 2001, some four years later.

We reiterate that the plaintiff has the burden of proving the decedent's inability to bring suit within the statutory period. The defendants do not have to prove dece-

dent's ability to do so. Here "the facts are so clear that reasonable minds cannot differ." *Id.* at 248 (citation omitted). Based on the record before us, there is no way plaintiff can establish that Mrs. Bare, if she had exercised reasonable diligence, could not have known more than two years before suit was initiated that her lung disease was probably caused by beryllium emissions from the Reading plant. *See id.* at 249. Accordingly, this action is out of time. We will grant the motions of defendants Cabot and NGK Metals for summary judgment as to all of plaintiff's claims.[1]

### ORDER

AND NOW, this 22nd day of April, 2002, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motions of defendants Cabot Corporation and NGK Metals Corporation for summary judgment are GRANTED; and

(2) judgment is entered in favor of defendants Cabot Corporation and NGK Metals Corporation and against plaintiff Sharon J. Reeser, as the Administratrix of the Estate of Geneva Bare, Deceased.

---

1. Defendant NGK Metals has also moved for summary judgment on several other grounds. Since we have granted the motions of defendants for summary judgment because all of plaintiff's claims are barred by the relevant statutes of limitations, we do not need to address these arguments.